```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,     )
                              )
          v.                  ) Case No. 10-cr-30021-MAP
                              )
JAMES M. JUNE,                )
          Defendant           )
```

<u>MEMORANDUM AND ORDER REGARDING
(1) DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S RULING ON
DEFENDANT'S MOTION FOR BILL OF PARTICULARS AND FOR DISCOVERY
ORDER (2) DEFENDANT'S MOTION TO INCLUDE MOTION FOR
CLARIFICATION FOR REVIEW, and (3) DEFENDANT'S MOTION FOR
FURTHER CONSIDERATION OF Rule 59(a) OBJECTIONS</u>
(Dkt. Nos. 156, 168 & 173)

January 25, 2012

PONSOR, U.S.D.J.

## I. INTRODUCTION

The government has charged Defendant James M. June, along with two co-defendants, with one count of conspiracy to commit wire and bank fraud, five counts of substantive wire fraud, three counts of bank fraud, and three counts of money laundering. The essence of the prosecution is the government's contention that Defendant June and his co-defendants intentionally lied and submitted false documents to banks and mortgage companies -- particularly a Ft. Lauderdale, Florida, mortgage brokerage firm, Banker's Mortgage Trust ("BMT"), and Bank of America ("BOA") -- about

their personal finances and about the finances of companies they allegedly controlled, in order to procure loans fraudulently.

The precise transactions are spelled out in detail in the Superseding Indictment (Dkt. No. 21). These specifics include: the dates, amounts, and borrowers involved in procuring fraudulent business lines of credit; the borrowers, dates, loan amounts, and addresses of thirty-two properties purchased and refinanced as part of the fraudulent scheme; an itemization by date and amount of the precise documents fraudulently submitted (mainly Uniform Residential Loan Applications); the dates and amounts of wire transfers caused to be transmitted as part of the fraudulent scheme; and the specific transactions (identified by date, amount, and account number) constituting the illegal money laundering. All the pertinent documents have been made available to Defendant's counsel by the government both in paper and electronically.

Despite the considerable information spelled out in the Superseding Indictment, on July 22, 2011, Defendant filed a Motion for Bill of Particulars and Discovery Order. Dkt.

107. On September 22, 2011, Magistrate Judge Neiman allowed the motion, to a limited degree -- requiring the government to make a modest expansion of its bill of particulars -- but otherwise denied the motion. See Dkt. No. 145.

On October 5, 2011, Defendant filed a Motion for Clarification of Judge Neiman's ruling, Dkt. No. 151. This motion argued that the Magistrate Judge's ruling overlooked a portion of Defendant's Motion for Bill of Particulars and Discovery Order. It contended that Judge Neiman had recognized at the hearing that the government's expert disclosure was inadequate, but had omitted a ruling as to whether the government would be required to disclose the bases of, and reasons for, its experts' opinions.

Also on October 5, 2011, the government filed the additional bill of particulars as ordered by Judge Neiman. See Dkt. No. 152. On October 6, 2011 Defendant filed his objections to Judge Neiman's September 22 ruling on his Motion for Bill of Particulars and Discovery Order. See Dkt. No. 156. Since that time there have been supplemental submissions and several hearings on the scope of the government's discovery obligations.

Defendant's objections focus on four areas: (1) his request for additional information in the bill of particulars; (2) his request for additional documents from financial institutions; (3) his request for co-conspirators' statements; and (4) his request that the government immediately designate discovery materials it will use in its case-in-chief. As noted, the Motion for Clarification (Dkt. 151) also seeks additional information regarding the government's experts. A Request for Further Consideration (Dkt. 173) offers further arguments in support of Defendant's request for bank documents.

## II. DISCUSSION

Fed. R. Civ. P. 72(a) establishes a clear standard for review of a magistrate judge's ruling on a nondispositive matter. The district court may set aside the ruling only if it "is clearly erroneous or is contrary to law." Respect for this standard is important. Magistrate judges play a pivotal role in overseeing discovery, particularly in cases like this where the documentary material is voluminous. Here, application of this standard makes the ruling on Defendant's appeal straightforward. For the reasons set

forth below, the court will overrule Defendant's objections to his order.[1]

The discussion below will address the five areas of discovery raised by Defendant's Objections and Motion for Clarification.

A. <u>The Bill of Particulars</u>.

Defendant, as noted, has objected to Judge Neiman's ruling that the government need not supply a further bill of particulars specifying the alleged fraudulent statements or conduct on which the allegations in Counts 1-9 are based. Given the substantial material already made available to Defendant, in addition to the detail contained in the indictment itself, it could hardly be argued that Judge Neiman's ruling on this point was off the mark. As the government points out, a bill of particulars is not a discovery tool, but rather a method for assuring that a defendant can prepare his case adequately, avoid surprise at trial, and be shielded from double jeopardy. The

---

[1] Even if the standard for review were less stringent, or if the court were addressing Defendant's motions initially and independently, the court's rulings would be the same.

5

information already in Defendant's hands is more than enough to address these concerns.[2]

B. <u>Additional Documents from Lending Institutions</u>.

As part of his request for a discovery order, Defendant sought voluminous documents from lenders, which he alleged the government had in its custody or control. Judge Neiman's decision not to order disclosure of any of the requested information was entirely proper, for at least two reasons. First, in the circumstances of this case, the government is not required to produce documents that are, indisputably, not within its custody or control. The line of cases typified by <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995), is simply not applicable here. As the First Circuit emphasized in <u>United States v. Joselyn</u>, 206 F.3d 144, 153-54 (1st Cir. 2000), the relationship between the government and "cooperating private parties" is not analogous to the relationship among various police investigators. It would be unfair to the government to require it to attempt to

---

[2]An issue was identified at oral argument about the phrasing of the government's supplemental bill of particulars in response to Judge Neiman's order. The government has agreed to modify its submission; this will be done within one week of this memorandum.

6

ferret out documents from third parties.

Second, and perhaps more importantly, the documents sought by Defendant are largely, if not entirely, irrelevant. As the authorities cited in the government's memorandum make clear, defendants in fraud cases may not adopt the "blame the victim" theme in attacking the government's case. See, e.g., United States v. Callipari, 368 F. 3d 22, 37 (1st Cir. 2004)(rev'd on other grounds, 543 U.S. 1098 (2005). The bank documents sought would be overwhelmingly, if not solely, pertinent to this impermissible line of defense. Defendant's argument that these documents would be helpful to the defense in demonstrating that the alleged misrepresentations made by Defendant were not "material," in the sense that they lacked the natural tendency to influence the lender's decisions, Dkt. 194-1 at 4-5, merely re-clothes the forbidden "blame the victim" defense in a slightly different costume. In the end, the aim would be to show that the victim's general lending policies were so slipshod or so venal that Defendant's alleged lies about his income and assets were of no moment. This evidence would inevitably confuse the jury

and divert its attention, as it weighed the issue of materiality, away from the real issue, which will be whether the misrepresentation had a natural objective <u>tendency</u> to influence, or was <u>capable</u> of influencing a lender's decision -- not whether it actually did or would have.  See, <u>United States v. Pimental</u>, 380 F.3d 575, 585 (1st Cir. 2004) (scheme to defraud does not need to inflict harm for participants to be guilty).  A carefully crafted jury instruction will assure that both the government and the defense play by the same rules.  The government will not be able to offer evidence that, in the specific circumstances, the alleged victims actually relied on Defendant's representations, or actually considered these representations material, any more than Defendant will be able to offer evidence to the contrary.

C. <u>Co-Conspirators' Statements</u>.

Judge Neiman declined to order disclosure of these statements, suggesting that the discoverability of these statements, and (if necessary) the timing of their disclosure be addressed by this court.  Having now reviewed the extensive disclosures already made by the government,

8

the court is satisfied that Defendant has received all that he is entitled to at present. He has received a copy of co-defendant Jason Foisy's statement to law enforcement. He has received all exculpatory statements made by co-conspirators. The statements of co-conspirators who will be testifying a trial will be disclosed along with other <u>Jencks</u> Act material two weeks prior to trial. Similarly the statements of any co-conspirators who will not be testifying, but whose statements will be offered as evidence against Defendant at trial through another witness, if any, will also be disclosed two weeks prior to trial. This level of disclosure is both sufficient and fair. Statements of non-testifying co-conspirators whose statements will not be offered at trial through another witness need not be disclosed, unless of course they are exculpatory.[3]

D. <u>Early Designation of Trial Materials</u>.

Defendant seeks immediate disclosure of the documents the government intends to offer in its case-in-chief. In

---

[3]If the trial goes forward on March 5, as currently scheduled, the two-week deadline will fall on a holiday, February 20. In this event the disclosures will be made by close of business on the previous Friday, February 17.

view of the voluminous materials potentially to be offered by the government at trial, the court hereby orders the government to disclose to Defendant the documents it intends to offer in its case-in-chief no later than February 17, 2012, or two weeks prior to trial if the March 5 trial date is moved.

E. <u>Expert Witness Disclosures.</u>

In a letter dated April 21, 2011, (Dkt. No. 53), Defendant asked for a written summary of any expert testimony, including any expert witness's opinion and the bases and reasons for such opinion. The government's response, dated May 20, 2011, (Dkt. No. 65), claimed that its witnesses were percipient rather than expert witnesses, but agreed, nonetheless, to disclose certain information requested out of an abundance of caution.

Defendant claimed that the government's disclosure was inadequate. Defendant said that the disclosure did not specify which documents were reviewed by the experts or reveal the witnesses' experience in the lending industry.

Judge Neiman agreed with Defendant that the government should be required to tell him which documents the experts

relied on and ordered the government to provide that information.  See Dkt. 145, at 8-9.  He did not require the government to provide any additional information.

A motion for clarification by Defendant suggested that Judge Neiman "may have overlooked" Defendant's request for the bases of and reasons for the expert opinions.  See Dkt. 151 at 3.  However, in his ruling on this motion on October 14, 2011, Judge Neiman confirmed that there had been no inadvertence in his ruling.  His resolution of this issue, in light of all the discovery, was entirely proper.

### III. CONCLUSION

For the foregoing reasons, Defendant's objections to Judge Neiman's rulings on Defendant's Motion for Bill of Particulars and for Discovery Order (Dkt. No. 156) are hereby OVERRULED.  The Motion to Include the Motion for Clarification as part of the objections (Dkt. No. 168) is hereby ALLOWED.  However, the court will not alter Judge Neiman's ruling regarding expert disclosure.  Finally, the Motion for Further Consideration of Rule 59(e) Objections (Dkt. 173) is ALLOWED in the sense that the court has given the matter further consideration.  Its conclusion, however, is that the Magistrate Judge's handling of Defendant's requests for further extensive bank documents was entirely

proper.

It is So Ordered.

                                              <u>/s/ Michael A. Ponsor</u>
                                              MICHAEL A. PONSOR
                                              U. S. District Judge